485 S.E.2d 710

**WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES ex rel. Yolanda MILLS, Social Services Worker, Petitioner Below, Appellee,**

v.

**BILLY LEE C., Margaret Ann C., Angelina C., April C., Ryan C. and Randy C., Respondents Below,**

**Billy Lee C., Respondent Below, Appellant.**

No. 23895.

Supreme Court of Appeals of West Virginia.

Submitted March 25, 1997.

Decided April 14, 1997.

R. Stephen Jarrell, Public Defender, Huntington, for Appellant Billy Lee C.

Darrell V. McGraw, Jr., Attorney General, Barbara L. Baxter, Assistant Attorney General, Charleston, for Appellee West Virginia Department of Health and Human Resources.

Lisa Fredeking White, Huntington, Guardian Ad Litem, for Infants Angelina C., April C., Ryan C. and Randy C.

PER CURIAM:

This case is before this Court upon an appeal from the final order of the Circuit Court of Cabell County, West Virginia, entered on March 15, 1996. The case concerns the alleged abuse and neglect of four children by the names of Angelina C., April C., Ryan C. and Randy C.[1] The appellant, Billy Lee C., contends that the circuit court committed error in terminating his parental rights to the children. The appellee, the West Virginia Department of Health and Human Resources, however, contends that, in terminating the appellant's parental rights, the circuit court ruled correctly and in a manner protective of the health and welfare of the children.

This Court has before it the petition for appeal, all matters of record and the briefs of counsel. For the reasons stated below, the final order of the circuit court is affirmed.

I

As in many such cases, the facts herein are grievous. The appellant and Margaret Ann C., his wife, are the natural parents of four children: Angelina (born on April 24, 1988), April (born on April 15, 1989), Ryan (born on January 8, 1991) and Randy (born on October 29, 1992). Unfortunately, as the marriage continued, the home environment, particularly with regard to the children, became less and less stable. For example, the record indicates that both parents drank alcohol and smoked marijuana in the presence of the children. According to psychologist, Paul Mulder, the appellant, in particular, acknowledged the "regular use of alcohol or marijuana." Moreover, the record indicates that the appellant engaged in domestic violence against Margaret Ann C. In one instance, he allegedly kicked Margaret Ann C. in the stomach while she was pregnant, necessitating medical treatment.

In addition, poor hygiene and inadequate clothing of the children and frequent absences of the children from school were problems. Moreover, the appellant and Margaret Ann C. ultimately separated, and the children lived with both parents at various times. The appellant's employment included working as an assistant manager of a fast food restaurant, and Margaret Ann C.'s employment included working as an exotic dancer. The record indicates that as a result of the separation of the appellant and Margaret Ann C., and as a result of their respective working hours, the children were often exposed to other individuals who, in themselves, brought the well-being of the children into question. In one instance, Robert B., a male companion of Margaret Ann C., allegedly battered Angelina. In fact, Robert B. had such a negative impact upon the children, generally, that Margaret Ann C. was ordered by the circuit court to avoid having the chil-

---

**1.** We follow our practice in domestic relations cases involving sensitive matters and use initials to identify the parties, rather than full names. *In the Matter of Jonathan P.,* 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

dren in his presence. Moreover, Angelina C. stated that the appellant's friends beat her, and she indicated that, on one occasion, one of the appellant's friends intentionally burned her with a cigarette. Furthermore, the record indicates that, while under the care of the appellant in April 1994, Angelina was allegedly sexually assaulted by the son of a baby sitter. With regard to the latter instance, although the medical evidence revealed that Angelina "had a laceration in her vagina and redness and bleeding" and a police report was filed, no charges were ever brought as a result of the allegation.

The circumstances resulting in this proceeding arose in December, 1994. On December 19, 1994, the Department of Health and Human Resources, with the assistance of the Cabell County Prosecuting Attorney, filed an emergency petition in the circuit court seeking immediate custody of the children and termination of the parental rights of the appellant and Margaret Ann C. The petition indicated that Angelina (then age 6), April (then age 5), Ryan (then age 3) and Randy (then age 2) were abused and neglected children. See W. Va.Code, 49–1–3 [1994], and W. Va.Code, 49–6–1 [1992]. Specifically, the petition alleged that the appellant had performed oral sex upon April C.

Upon review of the petition, the circuit court awarded temporary custody of the children to the Department and appointed a guardian ad litem upon the children's behalf. Soon after, the circuit court named a Court Appointed Special Advocate (CASA) for the children, appointed counsel for the appellant and Margaret Ann C. and scheduled a preliminary hearing. See W. Va.Code, 49–6–3(a) [1992]. The children were placed in a foster home in Wayne County, West Virginia. At the conclusion of the preliminary hearing, conducted in January, 1995, the circuit court stated: "[T]here is enough evidence to demonstrate there is probable cause that some form of sexual abuse and/or assault has occurred against [April C.] at the hands of [the appellant]."

In March, 1996, a final adjudicatory hearing was conducted by the circuit court, and the witnesses included Lisa Bailey and Brenda Wright. Lisa Bailey was April C.'s pre-school teacher for Cabell County schools, and Brenda Wright was a child protective service worker employed by the Department. Ms. Bailey, who had testified at the preliminary hearing, again stated that, on December 15, 1994, while at school, April C. went in and out of the bathroom several times. On the last occasion, Ms. Bailey accompanied April C. to the bathroom. Then, as Ms. Bailey testified:

> [April] pulled up her pants and she went ahead and washed her hands. And she kept putting her hands between her legs. She had done that frequently all day. And she said 'Hurt' again. And I asked her, I said, 'April, what hurts?' You know, I asked her, 'What hurts?' And she kept putting her hand between her legs. And she said, 'Hurt. Daddy hurt. Daddy eat me.' And I wasn't sure at that time what exactly she was saying. And I said, 'What?' And I was questioning her. And she repeated it. And I said, 'What does Daddy do?' And she patted herself on the crotch, and she said, 'Daddy put his head down here.'

Brenda Wright, who had also testified at the preliminary hearing, stated that she was present with April C. in the emergency room of Cabell Huntington Hospital immediately after the incident related by Ms. Bailey. As she testified at the preliminary hearing, Ms. Wright again indicated that she understood April to say at the hospital: "Daddy eat me." Furthermore, as Ms. Wright testified:

> Q. Were you present, I think you testified, during the physical examination of April by Dr. Lehman?
>
> A. Yes.... She was highly upset about the exam. We had a terrible time getting the exam over with. There was some redness and irritation in the vaginal area. And, yes, there was a strong odor.

A number of other witnesses testified at the final adjudicatory hearing including Huntington, West Virginia, police officer Kendra Clark, who described the police report concerning the alleged sexual assault of Angelina C. in April 1994, and Elizabeth Brachna, a family services counselor, who stated that both Angelina and April exhibited the "behavioral and psychological profile of a

sexually abused child." Moreover, during the hearing, the circuit court conducted an *in camera* proceeding during which the court interviewed Angelina C. and April C. It was during that hearing that Angelina C. indicated that the appellant's friends beat her. The appellant, who has denied the allegations of December, 1994, throughout this litigation, and who maintains that he was protective of his children, did not testify at the final adjudicatory hearing.

Following the final adjudicatory hearing, the circuit court entered the order of March 15, 1996. In terminating the appellant's parental rights, the final order stated:

> The respondent children were abused and neglected as those terms are defined in the West Virginia Code by both respondent parents, and both respondent parents failed to protect the respondent children while said children were in the custody of either respondent parent. The testimony herein provides clear and convincing evidence to the Court that not once, but on a number of occasions, these children were abused and neglected.... With regard to the respondent father, [the appellant], there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future.

As reflected in the final order, Margaret Ann C., was granted an improvement period concerning the children. The improvement period, however, was unsuccessful, and by order entered on September 12, 1996, the parental rights of Margaret Ann C. to the

children were also terminated. The latter order is not contested in this appeal and is, therefore, not before this Court.[2]

## II

The appellant contends that the circuit court committed error in terminating his parental rights to the children. In that regard, he argues that the Department failed to establish by clear and convincing evidence (1) that he abused April C., (2) that his conduct toward the children, generally, could not be substantially corrected and (3) that he failed to protect the children from others. As stated above, the appellant denied the allegations of December, 1994 and maintains that he was protective of his children. The West Virginia Department of Health and Human Resources, however, contends that the circuit court ruled correctly and in a manner protective of the health and welfare of the children.

 In syllabus point 1 of *In the Interest of: Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), this Court observed:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly errone-

---

**2.** In granting this appeal, this Court noted that the appellant, in his petition, asserted that his right to equal protection of the laws was violated because the final order of March 15, 1996, terminated his parental rights to the children but did not terminate the parental rights of Margaret Ann C. As stated above, however, the parental rights of Margaret Ann C. were later terminated. Consequently, the appellant's contention concerning equal protection is moot.

The record demonstrates that, at best, the relationship of Margaret Ann C. to her children was progressively troubled. As stated above, both parents drank alcohol and smoked marijuana in the presence of the children. Robert B., a subsequent male companion of Margaret Ann C., allegedly battered Angelina, and, in fact, Margaret Ann C. was ordered by the circuit court to avoid having the children in his presence. According to the record, Margaret Ann C. violated that

order. Moreover, in addition to the allegations concerning the babysitter's son, relating to the appellant, the record also contains assertions that Angelina may have been sexually molested by male babysitters utilized by Margaret Ann C. One witness described Angelina as indicating that those baby sitters were friends of Robert B, "who was mother's boy friend, who was not supposed to be in the home at that time."

Although the children were largely in foster care throughout the proceedings below, they were returned to Margaret Ann C. more than once, only to be returned again to foster care. On one occasion in 1996, the children were returned to the Department, and to foster care, at Margaret Ann C.'s request. Furthermore, Margaret Ann C.'s exercise of her visitation rights with the children, during the proceedings below, was sporadic.

ous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

See also syl. pt. 1, State ex rel. Virginia M. v. Virgil Eugene S., 197 W.Va. 456, 475 S.E.2d 548 (1996).

An "abused child" is defined in W. Va. Code, 49–1–3 [1994], as a child who is harmed or threatened by "[a] parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home[.]" In addition, W. Va. Code, 49–1–3 [1994], defines a "neglected child" as a child who is harmed or threatened "by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian [.]"

In particular, with regard to the termination of parental rights, W. Va. Code, 49–6–5(a)(6) [1992], provides that a circuit court may:

[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child, terminate the parental or custodial rights and/or responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the state department or a licensed child welfare agency.

Moreover, W. Va. Code, 49–6–5(b) [1992], provides:

As used in this section, 'no reasonable likelihood that conditions of neglect or abuse can be substantially corrected' shall mean that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect, on their own or with help. Such conditions shall be deemed to exist in the following circumstances, which shall not be exclusive:

(1) The abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and such abusing parent or parents have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning [.]

. . . .

(5) The abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems or assist the abusing parent or parents in fulfilling their responsibilities to the child [.]

▪ The above provisions of W. Va. Code, 49–6–5 [1992], are similar to the 1977 version of that statute, which this Court cited in In re R.J.M., 164 W.Va. 496, 266 S.E.2d 114 (1980). In syllabus point 2 of In re R.J.M., this Court held:

Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. VA. Code, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. VA. Code, 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected.

See also syl. pt. 1, In re Brianna Elizabeth M., 192 W.Va. 363, 452 S.E.2d 454 (1994).

▪ The In re R.J.M. case was subsequently cited by this Court in In re Jeffrey

R.L., 190 W.Va. 24, 435 S.E.2d 162 (1993). In *In re Jeffrey R.L.*, we held in syllabus point 3:

Parental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser.

See also syl. pt. 2, *In re Danielle T.*, 195 W.Va. 530, 466 S.E.2d 189 (1995), holding that parental rights should be terminated where a child had been burned and subjected to malnutrition.

■ In the case now before us, the final order made clear that the West Virginia Department of Health and Human Resources established by "clear and convincing evidence" that Angelina C., April C., Ryan C. and Randy C. were abused and neglected children. Moreover, the final order specifically stated that, with regard to the appellant, "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future." Based upon a careful review of the record, this Court is of the opinion that, under the standard of *In the Interest of Tiffany Marie S.* set forth above, the findings of the circuit court were not "clearly erroneous." With regard to the likelihood of correcting the conditions of abuse and neglect in the future, for instance, Dr. Mulder indicated as follows, concerning the appellant's use of alcohol and marijuana: "[G]iven the fact that [the appellant] does not perceive his level of alcohol and drug use to be a problem, it's questionable how much impact educational counseling will have. There is no evidence that [the appellant] would benefit substantially from psychiatric treatment or long-term psychological counseling."

Here, the allegations that the appellant sexually abused or assaulted April C. in December, 1994 were substantiated by Lisa Bailey, April C.'s preschool teacher, and Brenda Wright, a child protective service worker employed by the Department. Although the record before us does not include the medical records relating to that incident, Ms. Wright, who was present at the hospital when April C. was examined, described April C. as having "redness and irritation in the vaginal area."

■ Even in view of the appellant's denial of the incident of December, 1994, however, the record contains significant evidence of other circumstances of abuse and neglect of the children. As stated above, the appellant acknowledged the regular use of alcohol and marijuana, and the appellant engaged in domestic violence against Margaret Ann C. As this Court recognized in *Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 713–14, 356 S.E.2d 464, 467–68 (1987), such problems are relevant considerations with regard to the welfare of children in the home. See *W. Va.Code*, 49–6–5(b)(1) [1992]. Moreover, it is particularly disturbing that the record suggests that both the appellant and Margaret Ann C. routinely left the children with others who, in themselves, brought the well-being of the children into question. In fact, Angelina C. may have been beaten, burned with a cigarette and even sexually assaulted, while in the appellant's care. As family services counselor Elizabeth Brachna testified, generally, at the final adjudicatory hearing: "I find it very disturbing that the children have been exposed to this many situations and people."

■ In the recent case of *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996), this Court, in syllabus point 3, held: "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Here, this Court is of the opinion that the circuit court's ruling, terminating the appellant's parental rights to Angelina C., April C., Ryan C. and Randy C., was protective of the health and welfare of the children. Accordingly, the final order of the Circuit Court of Cabell County, entered on March 15, 1996, is affirmed.

Affirmed.