575 S.E.2d 214

**In re AARON THOMAS M., Delta Dawn M., and Luke Brian M.**

No. 30600.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 2002.

Decided Nov. 27, 2002.

Dissenting Opinion of Justice Starcher Dec. 11, 2002.

Joseph P. Albright, Jr., Esq., Bradley & Albright, PLLC, Parkersburg, West Virginia, Attorney for the Appellant, Christina L.

Darrell V. McGraw, Jr., Esq., Attorney General, Rocco S. Fucillo, Esq., Assistant Attorney General, Fairmont, West Virginia, Attorneys for the Appellee, West Virginia Department of Health and Human Resources.

Ira M. Haught, Esq., Harrisville, West Virginia, Guardian ad Litem for the minor children.

Justice ALBRIGHT, deeming himself disqualified, did not participate in the decision of this case.

Judge EAGLOSKI, sitting by temporary assignment.

PER CURIAM:

The appellant herein and respondent below, Christina L.[1], appeals from the January 8, 2002, order of the Circuit Court of Wood County terminating her parental rights to her minor children Aaron Thomas M., Delta

---

**1.** "We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather than their full names." *In re* *Jeffrey R.L.*, 190 W.Va. 24, 26 n. 1, 435 S.E.2d 162, 164 n. 1 (1993).

Dawn M., and Luke Brian M. upon a finding of abuse and neglect. Before this Court, Christina L. asserts that the circuit court erred by (1) finding that she had used controlled substances in her children's presence; (2) concluding that her alleged use of controlled substances in her children's presence constituted abuse; (3) requiring her to testify during the adjudicatory hearing; and (4) terminating her parental rights. Upon a review of the parties' arguments, the record submitted for appellate review, and the pertinent authorities, we affirm the ruling of the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts upon which the circuit court based its decision are as follows. On June 14, 2001, the appellee herein and petitioner below, the West Virginia Department of Health and Human Resources [hereinafter referred to as the "DHHR"], filed a petition in the Circuit Court of Wood County alleging that Aaron Thomas M.,[2] Delta Dawn M.,[3] and Luke Brian M.[4] were abused and/or neglected children pursuant to W.Va.Code § 49–1–3 (1999) (Repl.Vol.2001).[5] In particular, the petition alleged fifteen counts of abuse and/or neglect by the children's mother, Christina L. Included in the petition was an allegation that on December 11, 2000, school officials confiscated a marijuana pipe from Aaron. It was further alleged that Aaron "effectively demonstrate[d] how to use, take apart, and clean the pipe." Aaron also stated that "sometimes his five-year-old sister smokes his mother's cigarettes when she doesn't know it." The petition additionally averred that Christina L. repeatedly tested positive for marijuana use and failed to attend or

otherwise comply with various substance abuse rehabilitation programs, parenting classes, and counseling services, which the DHHR indicated were necessary to maintain custody of her children. Furthermore, a DHHR official observed Aaron and Delta playing unsupervised in the street in front of their home. Finally, it was alleged that Aaron had approximately thirty-two unexcused absences from school during the 2000–01 academic year. The unexcused absences resulted in the filing of a truancy petition for educational neglect. By order entered June 14, 2001, the circuit court found the children to be in imminent danger and transferred them to the temporary custody of the DHHR pending further adjudication.

An adjudicatory hearing was held, after which the circuit court, on August 27, 2001, entered an order adjudicating the three children to be abused and/or neglected based upon the above-described allegations. Specifically, the court concluded that "not getting a seven year old child to school so that he can obtain a proper education is neglect" and "using a pipe enough times in the presence of a seven-year-old for him to acquire the information that this seven-year-old has acquired ... is abuse." The circuit court further found that Christina L.'s continued "use of marijuana has affected the Respondent Mother's ability to supervise and care for these children and as a result they are abused and neglected children."

Following the adjudicatory hearing, the DHHR recommended, and the circuit court granted, on September 20, 2001, Christina L. a six-month post-adjudicatory improvement period. The terms of this improvement period required Christina L. to attend in-patient substance abuse treatment, Alcoholics Anonymous/Narcotics Anonymous meetings, outpatient counseling, and parenting classes; to

---

2. Aaron was seven years old at the time the subject petition was filed.

3. Delta was five years old when the instant proceedings were initiated.

4. Luke was two years old when DHHR filed the abuse and neglect petition.

5. Prior to the instant petition being filed, DHHR had previously been involved with Christina L. During the adjudicatory hearing in this case

there was testimony that DHHR tried to work with Christina L. in 1999. During that time Christina L. was referred for assistance with the Intensive Out–Patient Group, Positive Parenting and Recovery Group and Individual Therapy. As a result of Christina L.'s noncompliance with DHHR's initial efforts to stabilize her family, services to her were terminated in April of 2000.

report such attendance to the DHHR; to submit to random drug screens; to apply to HUD for housing assistance; to maintain adequate housing for the children; to cooperate with in-home services designed to improve her parenting skills; to attend GED classes in order to qualify for the West Virginia works program; to ensure the children go to school; and to sever her relationship with a certain Raymond J. if he does not, among other requirements, receive treatment and counseling for substance abuse and domestic violence. During this improvement period, Christina L. retained physical custody of her children. Upon Christina L.'s ultimate failure to comply with the terms of her improvement period, the circuit court, by order entered November 28, 2001, terminated such improvement period and transferred custody of the minor children to the DHHR.

Thereafter, a dispositional hearing was held, and, on January 8, 2002, the circuit court entered a dispositional order terminating Christina L.'s parental rights. In its order, the circuit court observed that Christina L. "exhibited a pattern of continued drug use . . . and a lack of cooperation to comply with any of the terms or conditions of the improvement period." The court further found that "the Respondent Mother is addicted to controlled substances or drugs to the extent that proper parenting skills have been impaired[,] and the Respondent Mother has not responded to or followed through with the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning." Accordingly, the circuit court finally concluded that, "pursuant to West Virginia Code, § 49-6-5(b), there is no reasonable likelihood that the conditions of abuse and neglect can be corrected in the near future," and that "it is necessary for the welfare of the children to terminate the parental rights" of Christina L. From this dispositional order, Christina L. appeals to this Court.

## II.

### STANDARD OF REVIEW

 In appeals of abuse and neglect cases we apply the following standard of review:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996). With this standard in mind, we proceed to consider the parties' arguments.

## III.

### DISCUSSION

Before this Court, Christina L. raises four assignments of error: (1) the circuit court erred by finding that she had used controlled substances in her children's presence; (2) the circuit court improperly concluded that her alleged use of controlled substances in her children's presence constituted abuse; (3) the circuit court erroneously required her to testify during the adjudicatory hearing; and (4) the circuit court improperly terminated her parental rights. We will address each of these issues in turn.

#### A. Use of Controlled Substances in Children's Presence

 Christina L. first complains that the circuit court erred by finding that there was clear and convincing evidence that she had used controlled substances in the presence of her children. This Court observed in Syllabus point 1, in part, of *In re of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981), that W.

Va.Code § 49–6–2(c) requires DHHR, "in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' " ' *See* Syl. pt. 3, *State v. Julie G.*, 201 W.Va. 764, 500 S.E.2d 877 (1997). We made clear in *Julie G.* that "[t]he burden of proving that a child is abused or neglected is placed upon the DHHR." *Julie G.*, 201 W.Va. at 774, 500 S.E.2d at 886.

The evidence relied upon by the trial court to find that Christina L. used drugs in the presence of her children came, in part, from statements made by Aaron, regarding the marijuana pipe found in his possession.[6] In its adjudicatory order, the circuit court found that the evidence established that "Aaron had been around the use of that pipe enough times to be able to demonstrate how to use it, take it apart and clean the pipe[.]" In addition, there was conclusive evidence that Christina L. had a drug problem.

We agree with the trial court's determination that Aaron, at seven years old, could not learn how to take apart and clean a marijuana pipe, absent repeated exposure to this. In addition, the fact that Christina L. was a drug user leads to a reasonable inference that she repeatedly used the marijuana pipe in Aaron's presence, "if not all three of the children." In view of these facts, we have no difficulty in holding that the circuit court was not clearly erroneous in finding Christina L. used drugs in the presence of her children.

### B. Use of Drugs in Children's Presence Constitutes Abuse

Christina L. next claims that the DHHR failed to prove by clear and convincing evidence that her alleged use of controlled substances in front of her children caused physical, mental, or emotional injury to the children. We have previously noted

that "W. Va.Code § 49–1–3(a), in pertinent part, defines abused child to mean a child whose welfare or health is harmed or threatened by '[a] parent . . . who knowingly or intentionally inflicts . . . physical injury or mental or emotional injury, upon the child[.]' " ' *State ex rel. Diva P. v. Kaufman*, 200 W.Va. 555, 566, 490 S.E.2d 642, 653 (1997).

The circuit court's adjudicatory order found that "using a pipe enough times in the presence of a seven-year-old for him to acquire the information that this seven-year-old has acquired . . . is abuse." The DHHR asserts that Christina L.'s substance abuse caused emotional injury to her children, evidenced, in part, by a statement Aaron made concerning whether his mother was still smoking. It was also pointed out by DHHR that one of the dispositive factors found in the termination of parental rights in *W.V.D.H.H.R. ex rel. Mills v. Billy Lee C.*, 199 W.Va. 541, 545 n. 2, 485 S.E.2d 710, 714 n. 2 (1997), was that "both parents drank alcohol and smoked marijuana in the presence of the children." We believe that the circuit court was not clearly erroneous in finding the children were emotionally abused by Christina L.'s repeated drug use in their presence.

### C. Requiring Christina L. to Testify under Immunity

Christina L. additionally argues that, despite her attempts to assert her constitutional right not to incriminate herself,[7] the circuit court nevertheless required her to answer a question during the adjudicatory hearing that she deemed self-incriminating. Christina L. asserts that the circuit court lacked the authority to grant her "use immunity" [8] for the purpose of compelling her to answer the question.

---

6. Christina L. asserted that the marijuana pipe in question was not hers, but belonged to a friend. However, Aaron indicated that the pipe belonged to his mother.

7. "The Fifth Amendment privilege against self-incrimination is not limited to the context of criminal trials but can be claimed in any proceeding, whether it is criminal or civil, administrative or judicial, investigatory or adjudicatory." Syl. pt. 1, *State ex rel. Osburn v. Cole*, 173 W.Va. 596, 319 S.E.2d 364 (1983).

8. "Use immunity refers to an order of court that compels a witness to give self-incriminating testimony while at the same time prohibiting the use of such testimony in a subsequent prosecution of the witness. Use immunity protects a witness only against the actual use of the compelled testimony and evidence derived directly or indirectly from such testimony." *State v. Simpson*, 587 N.W.2d 770, 772 (Iowa 1998). *See Braswell v. United States*, 487 U.S. 99, 117, 108 S.Ct. 2284, 2294–95, 101 L.Ed.2d 98, 114 (1988)

A review of the record indicates that the state asked Christina L. if Aaron had asked her if she was still smoking (marijuana). Defense counsel initially objected on the grounds that a response to the question would be self-incriminating. After the objection, the following exchange occurred between the attorneys and the court:

> The Court: Are you willing to offer her immunity in this case?
>
> The State: In regard to the behavior that I'm referring to from the incident yesterday, answering that question I'm not going to use that in future prosecution, no, Your Honor?
>
> The Court: Mr. Albright?
>
> Defense Counsel: I don't know that he spoke the magic words. But if the Court's going to grant immunity based on that, I'm sure that would overcome my objection.

The circuit court went on to grant Christina L. use immunity, and she answered the question by responding that she did tell Aaron she was still smoking. In this appeal, the State correctly points out that any error in requiring Christina L. to answer the question was invited and therefore waived. We agree.

The decisions of this Court have been quite clear in holding that "[a] judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." Syl. pt. 21, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966). *See* Syl. pt. 4, *State v. Johnson*, 197 W.Va. 575, 476 S.E.2d 522 (1996). That is, "[a] litigant may not ... actively contribute to such error, and then raise that error as a reason for reversal on appeal." Syl. pt 1, in part, *Maples v. West Virginia Dep't. of Commerce*, 197 W.Va. 318, 475 S.E.2d 410 (1996). In the instant case, defense counsel expressly approved of Christina L. waiving her right against self-incrimination, if the circuit court granted her immunity. Therefore, Christina L. cannot now complain on appeal that the circuit court did not have authority to grant her immunity.

We agree with Christina L. that no statutory authority existed for the trial court to grant her immunity in a civil abuse and neglect proceeding.[9] Further, for the sake of argument, had this issue been properly preserved we would deem the error harmless.[10] The testimony given by

---

("Testimony obtained pursuant to a grant of statutory use immunity may be used neither directly nor derivatively." (citations omitted)).

9. The record is not clear, but it appears that the trial court relied upon W. Va.Code § 57-2-3 (1965) (Repl.Vol.1997), as the source of authority to grant immunity. This statute states:

> In a criminal prosecution other than for perjury or false swearing, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination.

*Id.* Christina L. correctly points out that we have held that "[t]he language of [the statute] addresses only the admissibility of a statement in court, and does not address a statement's possible 'use' for other purposes related to a criminal investigation or prosecution." *State ex rel. Wright v. Stucky*, 205 W.Va. 171, 174–75, 517 S.E.2d 36, 39–40 (1999), *disapproved on other grounds, In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). The actual general immunity statute in this State is applicable only to testimony given in a criminal proceeding. *See* W. Va.Code § 57-5-2 (1923) (Repl.Vol.1997) ("In *any criminal proceeding* no person shall be excused from testifying or from producing documentary or other evidence upon the ground that such testimony or evidence may criminate or tend to criminate him, if the court in which he is examined is of the opinion

that the ends of justice may be promoted by compelling such testimony or evidence. And if, but for this section, the person would have been excused from so testifying or from producing such evidence, then if the person is so compelled to testify or produce other evidence and if such testimony or evidence is self-criminating, such self-criminating testimony or evidence shall not be used or receivable in evidence against him in any proceeding against him thereafter taking place other than a prosecution for perjury in the giving of such evidence, and the person so compelled to testify or furnish evidence shall not be prosecuted for the offense in regard to which he is so compelled to testify or furnish evidence, and he shall have complete legal immunity in regard thereto." (emphasis added)). *See also* Syl. pt. 1, *Committee on Legal Ethics of West Virginia State Bar v. Graziani*, 157 W.Va. 167, 200 S.E.2d 353 (1973) ("It is generally held that immunity statutes apply only to criminal prosecutions.").

10. The actual "harm" that could have resulted from this error would have arisen if the State brought a criminal action against Christina L., based upon her answer to the question in the abuse and neglect proceeding. If that had occurred, we would then have to determine whether such a criminal action could follow based upon an erroneous grant of immunity in the civil abuse and neglect proceeding. However, that specific issue is not before us.

Christina L. merely affirmed that she made a statement to Aaron indicating that she was still smoking. The statement itself was introduced into evidence independent of Christina L.'s confirmation that it was made by her. Consequently, had there been no purported grant of immunity and Christina L. had not responded to the question, our cases permitted the circuit court to "consider ... [her] silence as affirmative evidence of ... culpability." Syl. pt. 2, in part, *W.V.D.H.H.R. ex rel. Wright v. Doris S.*, 197 W.Va. 489, 475 S.E.2d 865 (1996). *See also Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810, 821 (1976) ("[T]he prevailing rule [is] that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]").

### D. Termination of Parental Rights

▇▇▇▇ Christina L. lastly asserts that the circuit court's termination of her parental rights was improper. She contends that her use of marijuana and her failure to ensure one child's attendance at school during one school year do not amount to child abuse so as to require the termination of her parental rights. This Court has held that "[a]s a general rule the least restrictive alternative regarding parental rights to custody of a child ... will be employed; however, courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened[.]" Syl. pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980). We have made clear that "[t]ermination of parental rights ... may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code § 49-6-5(b) that conditions of neglect or abuse can be substantially corrected." Syl. pt. 2, in part, *In re R.J.M. See In re Emily*, 208 W.Va. 325, 337, 540 S.E.2d 542, 553 (2000).

In the instant case, the circuit court found that the children were abused and that it was in their best interest to terminate Christina L.'s parental rights. The parental termination decision was made from a combination of evidentiary factors. For instance, the circuit court found that Christina L. "is addicted to controlled substances or drugs to the extent that proper parenting skills have been impaired[.]" It was found that Christina L. failed to "follow[ ] through with the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning." The circuit court also determined that Christina L. "has not responded to or followed through with a reasonable family case plan or rehabilitative efforts ... designed to reduce and prevent the abuse and neglect of the children[.]" The DHHR correctly points out that under W. Va.Code § 49-6-5(b) (1998) (Repl.Vol. 2001), drug abuse and failure to comply with a family case plan are grounds for terminating parental rights.[11] *See In re Micah Alyn R.*, 202 W.Va. 400, 406, 504 S.E.2d 635, 641 (1998) ("[I]f the abusing parent willfully refused or is presently unwilling to cooperate

---

11. The relevant provisions under W. Va.Code § 49-6-5(b) (1998) (Repl.Vol.2001) provide as follows:

(b) As used in this section, "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" shall mean that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect, on their own or with help. Such conditions shall be deemed to exist in the following circumstances, which shall not be exclusive:

(1) The abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and such person or persons have not responded to or followed through [with] the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning;

(2) The abusing parent or parents have willfully refused or are presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control;

(3) The abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

in the development of a family case plan, a finding of 'no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected' under the statute is warranted."); *Nancy Viola R. v. Randolph W.,* 177 W.Va. 710, 713, 356 S.E.2d 464, 467 (1987) ("[T]he legislature has stated expressly that the 'conditions of neglect or abuse' which constitute grounds for termination of parental rights include ... '[t]he abusing parent or parents have habitually abused or are addicted to alcohol ... to the extent that proper parenting skills have been seriously impaired[.]' " '). Insofar as the evidence supported a statutory basis for terminating Christina L.'s parental rights, we affirm the trial court's decision.

## IV.

### CONCLUSION

The January 8, 2002, order of the Wood County Circuit Court terminating Christina L.'s parental rights in her minor children, Aaron Thomas M., Delta Dawn M., and Luke Brian M. is affirmed.

Affirmed.

STARCHER, Justice, dissenting:

(Filed Dec. 11, 2002)

It always has struck me as somewhat counter-productive for judges to tell people who are before the court for misconduct, "I don't want to see you back here again." It would be much more realistic to say, "Well, we want you to shape up, but we recognize that we may well see you back here again, and we can handle that possibility also. We are not going to give up on you."

This attitude, of expecting that people will "mess up" on occasion, "stumble as they learn to walk," is applicable in spades to people with substance abuse problems.

After all, if it were easy to overcome a substance abuse problem, a high percentage of the people in jail would probably not be there. Therefore, the fact that this mother did not promptly "overcome" her substance abuse problem is simply not grounds to take her children away from her permanently.

The majority opinion disregards the less severe alternative of removing the children from the home temporarily. If the mother over time shows no signs of improving, the Department can then seek a modification and termination. *W.Va.Code,* 49–6–5(a)(5).

I am always reluctant to second-guess trial judges in cases like this. But I think that the Court in the instant case could and should have given this mother more time— and should have made the DHHR do something more than say, "She won't cooperate."

Accordingly, I dissent.

I am authorized to state that Justice AL-BRIGHT joins me in this separate opinion.