600 S.E.2d 334

**In re: TIFFANY P., Robby P., Alexandria F., and Cheyenne F.**

**No. 31608.**

Supreme Court of Appeals of West Virginia.

Submitted April 27, 2004.

Decided May 28, 2004.

Concurring Opinion of Justice Starcher June 25, 2004.

Starcher, J., filed concurring opinion.

McGraw, J., dissented.

Tonya L. Mounts, Esq., Gilbert, West Virginia, Attorney for Bobby F.

Darrell V. McGraw, Jr., Esq., Attorney General, Charleston, Teresa L. Brown, Esq., Assistant Attorney General, Teays, West Virginia, Attorneys for WVDHHR.

Teresa McCune, Williamson, West Virginia, Guardian ad Litem.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Mingo County entered on March 24, 2003. Pursuant to that order, the circuit court terminated the parental rights of the appellant, Bobby F., to his children, Alexandria F. and Cheyenne F. In this appeal, the appellant contends that the evidence did not support termination of his parental rights. He further contends that, at a minimum, the circuit court erred by denying him post-termination visitation with his children.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order is reversed, and this case is remanded to the circuit court for

further proceedings consistent with this opinion.

## I.

### FACTS

On February 21, 2002, the West Virginia Department of Health and Human Resources (hereinafter "DHHR") sought and obtained emergency custody of Tiffany P., born December 30, 1986; Robby P., born September 13, 1988; Alexandria F., born April 28, 1997; and Cheyenne F., born February 5, 2000. The children were residing with Bobby F. and Christine P. who are the biological parents of Alexandria F. and Cheyenne F.[1] Tiffany P. and Robby P. are Christine P.'s children from prior relationships.[2]

The DHHR had previously provided services to this family in connection with an abuse and neglect proceeding involving one of Bobby F.'s other children, Austin S. Bobby F. intervened in that proceeding and was granted physical custody of Austin S. and Austin's half-sister, Christina S.,[3] on July 30, 2001.[4] At that time, Bobby F. was residing with Christine P. and the children who are the subject of this abuse and neglect proceeding. The DHHR became concerned after a social worker reported finding bruises and bite marks on Austin S. and Christina S. during a home visit. Follow-up visits caused further concern as the house was in poor physical condition, and Alexandria F. and Cheyenne F. appeared dirty and unkempt.

On October 7, 2001, Christine P. phoned the abuse and neglect hotline and reported that Bobby F. had "taken off" two days ago and had not told her when he would be back. Christine P. said she believed that Bobby F. had quit taking his medication which had been prescribed to treat his diagnosis of paranoid schizophrenia. She was concerned because she had no parental or guardianship rights regarding Austin S. and Christina S., and therefore, could not sign any medical forms if the children needed treatment. As a result of this phone call, Austin S. and Christina S. were removed from the home. Subsequently, Bobby F.'s parental rights to Austin S. were terminated in a separate abuse and neglect proceeding.

The DHHR continued to provide services to the family, and on November 5, 2001, a social worker made another home visit. Bobby F. was at the home visiting the children. The social worker reported finding bruises on both Alexandria F. and Cheyenne F. The family said that a dog had bit Alexandria F. and that Cheyenne F. had fallen on the steps. About the same time, Tiffany P. reported that Bobby F. had cut himself with a knife in front of them. Christine P. said that she believed that Bobby F. was still not taking his medication, and she agreed to keep him out of the home.

However, about a month later, Bobby F. went to the DHHR office and said he wanted to move back home with Christine P. and the children. He indicated that he was now taking his medication. Two weeks later, though, Christine P. reported that she and Bobby F. got into a fight in front of the children because he tried to take her food stamps. Christine P. had a bite mark on her wrist and a chipped tooth. She said there was a warrant for Bobby F.'s arrest for domestic battery. Christine P. was told that she could not allow Bobby F. to come near the children.

Finally, on February 7, 2002, the DHHR learned that both Bobby F. and Christine P. had been arrested. The record is not complete regarding the details of the arrests, but

---

1. Bobby F. is the biological father of six other children. Five of those children reside in North Carolina with their mother, Melissa D., to whom Bobby F. is still married. As discussed herein, Bobby F.'s parental rights to his other child, Austin S., were terminated in a separate abuse and neglect proceeding.

2. Timothy Y. is the biological father of Tiffany P., and James P. is the biological father of Robby P. Both were parties to the proceedings below, but are not participating in this appeal. Likewise, Christine P. is not a party to this appeal. As discussed herein, the children were returned to her custody.

3. Bobby F. is not Christina S.'s biological father.

4. The parental rights of the mother of Austin S. and Christina S. were terminated. According to DHHR, Bobby F. intervened in that abuse and neglect case in an effort to obtain custody of Austin S.

it appears that Christine P. was driving a car with Tiffany P. and Bobby F. as passengers. A police officer saw Bobby F. and attempted to stop the car because of the outstanding warrant for his arrest. However, Christine P. refused to pull over and a high speed chase ensued. Eventually, the car was stopped and both Christine P. and Bobby F. were arrested. Shortly thereafter, the DHHR filed the emergency petition and removed the children from the home.

An adjudicatory hearing was held on September 18, 2002. During the hearing, the court was advised that Bobby F. had recently been arrested for petit larceny and giving false information. The arresting police officer reported that he found four generic pain pills in Bobby F.'s pocket when he served the arrest warrants. Bobby F. did not have a prescription for the medication. At the end of the hearing, the court found that the children were abused and neglected. However, the children were returned to the physical custody of Christine P. The court further ordered that Bobby F.'s supervised visitation should continue.

On October 21, 2001, the court conducted the disposition hearing. The DHHR did not recommend termination of the parental rights of any of the parents involved in this case. Instead, the DHHR indicated that the children should remain in Christine P.'s custody. However, the DHHR continued to express concern regarding Bobby F.'s behavior, and thus, recommended that he only be permitted to have supervised visitation with the children. Thereafter, the court entered the final order on March 24, 2003. Christine P. was granted legal and physical custody of the children, and Bobby F.'s parental rights were terminated. Bobby F. was not granted post-termination visitation with his children. This appeal followed.

## II.

### STANDARD OF REVIEW

■ As set forth above, Bobby F. appeals the termination of his parental rights and the denial of post-termination visitation with his children. This Court recently explained in *In re Emily,* 208 W.Va. 325, 332,

540 S.E.2d 542, 549 (2000) that, "For appeals resulting from abuse and neglect proceedings, such as the case *sub judice,* we employ a compound standard of review: conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." Also, in Syllabus Point 1 of *In the Interest of: Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996), this Court held that:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

With these standards in mind, we now consider whether the circuit court erred in this case.

## III.

### DISCUSSION

■ Bobby F. contends that the evidence does not support termination of his parental rights. He asserts that the circuit court based its decision upon erroneous findings of fact. He maintains that there is no clear and convincing evidence that he neglected or abused his children.

■ This Court has held that, " 'As a general rule the least restrictive alternative regarding parental rights to custody of a child . . . will be employed; however, courts are not required to exhaust every speculative possibility of parental improvement before

terminating parental rights where it appears that the welfare of the child will be seriously threatened[.]' Syllabus point 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syllabus Point 3, *In re Aaron Thomas M.*, 212 W.Va. 604, 575 S.E.2d 214 (2002). Having carefully reviewed the record, we agree that the evidence in this case does not warrant termination of Bobby F.'s parental rights. Instead, we believe that the circuit court should have ordered supervised visitation as recommended by the DHHR.

During the dispositional proceedings below, the DHHR did not recommend termination of Bobby F.'s parental rights.[5] The guardian ad litem agreed with that decision. The Children's Case Plan, which was submitted prior to the dispositional hearing, stated that:

> The [DHHR] recognizes that Bobby [F.] is the biological father to the children Alex[andria] and Cheyenne [F.] Although [Bobby F.] has had his parental rights terminated to another child, the [DHHR] recognizes that the situation in this case is somewhat different and does not recommend parental termination at this time. The [DHHR] recognizes that [Bobby F.] has a strong bond with Alex[andria] and Cheyenne and has helped in the rearing of the children; however, the [DHHR] does not feel that [Bobby F.] could adequately take care of the children alone and should therefore not be considered as a primary caretaker. [Bobby F.] has a history of mental illness and a history of not taking his prescription medication. [Bobby F.] also has a criminal background and currently has criminal charges pending against him. [Bobby F.] has been around drugs and has committed domestic assault against [Christine P.] [Bobby F.] has also displayed inappropriate behaviors in front of the children. Based on those concerns, while the [DHHR] does not recommend parental termination at this time, the [DHHR] does recommend that [Bobby F.] stay away from the residence of [Christine P.] and the said children. The [DHHR] recommends that [Bobby F.] receive su-

pervised visitation at the discretion of [Christine P.]

The record clearly supports this disposition. As noted above, the children were returned to the custody of Christine P. upon the circuit court finding that the conditions that warranted the removal of the children from the home had been resolved. Bobby F. and Christine P. ended their relationship, and Bobby F. is no longer a custodial parent of the children.

In addition, there is no evidence in the record that Bobby F. abused his children. The final order of the circuit court states that some of the children suffered bruises and bites while in Bobby F.'s custody. However, at the preliminary hearing in this matter, DHHR's child protective services worker testified that she concluded that Cheyenne F. was biting the other children. She did not believe that either Bobby F. or Christine P. was abusing the children. Rather, she was concerned about a lack of supervision.

This court is certainly mindful of Bobby F.'s criminal history. As noted above, a domestic battery warrant was issued as a result of an altercation with Christine P. Bobby F. was also arrested for petit larceny. These facts must be considered when making a determination concerning whether or not to terminate parental rights. However, this Court has held that, " 'A natural parent of an infant child does not forfeit his or her parental right to the custody of the child merely by reason of having been convicted of one or more charges of criminal offenses.' Syllabus point 2, *State ex rel. Acton v. Flowers*, 154 W.Va. 209, 174 S.E.2d 742 (1970)." Syllabus Point 7, *In re Emily*, 208 W.Va. 325, 540 S.E.2d 542 (2000).

In light of all of the above, we do not believe that the least restrictive alternative in this case was termination of Bobby F.'s parental rights. Since Bobby F. is no longer a custodial parent, we are unable to find that the welfare of the children will be seriously threatened absent termination of his parental rights. While Bobby F.'s actions, conduct,

---

**5.** In this appeal, DHHR did not object to the circuit court's findings and its decision to termi-

nate Bobby F.'s parental rights.

and behavior cause this Court great concern, the record in this case leads us to conclude that termination of his parental rights was not in the best interests of the children. In that regard, the record shows that Bobby F. has a strong bond with his children and that, until these proceedings were instituted, he was actively involved in caring for and raising his children. While this case was pending below, Bobby F. exercised his right to see his children, missing only two scheduled visitations. On numerous occasions, this Court has indicated that the best interest of the children is the polar star in the resolution of abuse and neglect cases. *See Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best interests of the child is the polar star by which decisions must be made which affect children."); Syllabus Point 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972) (" 'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Point 2, Syllabus, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302 [47 S.E.2d 221]."). Given the circumstances of this case, while it is clear from the evidence that Bobby F. should never be the custodial parent, we are unable to see how the children would benefit from the termination of Bobby F.'s parental rights at this juncture.

■ While we find that termination of parental rights is not appropriate in this case, we also believe that Bobby F.'s visitation with his children must be supervised. Bobby F. suffers from a serious mental illness, and in the past, he has exhibited very inappropriate behavior in front of the children including cutting himself with a knife. For that reason, his visitation with the children must be closely, strictly, and constantly supervised. To that end, we remand this case to the circuit court for entry of an order consistent with this opinion that will provide that any visitation of Bobby F. with these children must be strictly supervised.[6]

6. In light of this decision, we need not address Bobby F.'s assignment of error relating to the

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Mingo County entered on March 24, 2003, is reversed, and this case is remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

Justice McGRAW dissents.

STARCHER, Justice, concurring:

(Filed June 25, 2004)

I concur in the Court's opinion and judgment. I write separately to point out that the father in this case, Bobby F., has been diagnosed with schizophrenia and was not taking his prescribed medication.

Schizophrenia, a serious neurological brain disorder, strikes one out of one hundred people worldwide, with the usual onset of symptoms coming between the ages of 13 and 25. Like diabetes, there is no cure—only treatment, which is basically medication to relieve the symptoms of psychosis, disorganized thoughts, etc. The cause of schizophrenia is unknown, although there is some genetic-based component. Some of my best friends have adult children with schizophrenia.

Many people with schizophrenia "do well" if they consistently take prescribed medicine. (However, a substantial percentage, unfortunately, do not do well, despite the best treatment.) But many people with schizophrenia have a substantially diminished or no appreciation of the fact that they have an illness. These people often do not take prescribed medications, through no fault of their own.

The consequences of schizophrenia for patients, families, and our society—particularly untreated schizophrenia—are enormous. Most people with the illness are cared for by their families; many others are isolated and/or homeless. For many family members and other treatment and care providers, getting a person who has schizophrenia to "vol-

denial of post-termination visitation.

untarily" take their medicine can be a very difficult—or impossible—task. The result is often a spiral into psychosis and expensive involuntary hospitalization.

Fortunately, new laws like "Kendra's Law" in New York have drastically reduced episodes of psychosis, violence, and homelessness among non-compliant patients—by using court orders and assertive community treatment as a less-restrictive alternative, to encourage patients with schizophrenia to take prescribed medicine.

In the instant case, the whole sorry series of events might have been avoided if Bobby F. had been required by a court order to take his prescribed medicine.

I pray that we will soon implement better laws in West Virginia to help health care providers and families and patients like Bobby F. and his children.

Maynard, C.J., dissented.