[Nos. 32948-4-II; 32951-4-II; Division Two. August 1, 2006.]
32958-1-II.

*In the Matter of the Welfare of* C.B. ET AL.

338

*Anton L. Knappert* (of *The Defender Association*); *Catherine E. Glinski*; and *Jennifer L. Dobson*, for appellant.

*Robert M. McKenna, Attorney General*, and *Tanya L. Thorp, Assistant*, for respondent.

¶1 VAN DEREN, A.C.J. — C.L.B. appeals termination of her parental rights to her three children, C.B., B.B., and S.B. She argues that (1) RCW 13.34.180 and RCW 13-.34.190, the Washington parental rights termination statutes, are facially unconstitutional because they are not narrowly drawn to meet a compelling state interest and do not require the trial court to find that there are no less restrictive alternatives before terminating a parent's fundamental rights and (2) if these statutes are constitutional, the State failed to prove the statutory elements necessary to justify termination of C.L.B.'s parental rights. We adopt Division One's reasoning in *In re Dependency of I.J.S.*, 128 Wn. App. 108, 114 P.3d 1215, *review denied*, 155 Wn.2d 1021, 128 P.3d 1240 (2005), uphold the constitutionality of RCW 13.34.180 and 13.34.190, and conclude that the trial court did not err in terminating C.L.B.'s parental rights.

## FACTS

¶2 C.L.B. is the mother of three children, C.B., B.B., and S.B.[1] The father was murdered in February 1997. Since July 1994, there have been six referrals to state authorities in Washington on behalf of the children and two referrals in Texas alleging physical abuse and neglect, medical neglect, sexual abuse, and drug use.

---

[1] C.B., a boy, was born in January 1997; B.B., a boy, was born in July 1994; and S.B., a girl, was born in February 1993.

¶3 In May 2001, C.L.B. placed all three children informally with their paternal grandmother, Annette Lamphere, whose husband was a registered sex offender. In March 2003, S.B. reported that Lamphere's husband had touched her on her chest. Before C.L.B. gave Lamphere informal custody of all three children in May 2001, C.L.B. and the children lived with C.L.B.'s father and her brother, who is a level III sex offender. During that time, C.L.B.'s father sexually abused S.B., a fact confirmed when S.B. was diagnosed with chlamydia. C.L.B. apparently disclosed the abuse to another family member, but she continued to reside with her father and brother. S.B. also reported in March 2002 that her paternal grandfather, William Beatty, "touched her private areas and has been trying hard to stop the bad touching." Ex. 3 (1.5). Moreover, the children's blood tests indicated abnormal enzymes consistent with exposure to drug manufacture. Unchallenged testimony at the termination trial further demonstrated that C.L.B. exposed the children to drug activities, criminal behavior, and pornography. And B.B. began acting out sexually toward his siblings.

¶4 On April 15, 2002, in Young County, Texas, C.L.B. pleaded guilty to possession of a controlled substance—methamphetamine. In exchange for her guilty plea, the Texas trial court sentenced C.L.B. to 10 years of "intensive community supervision," a sentence that allowed her to avoid incarceration so long as she complied with an extensive list of conditions.[2] But C.L.B. violated these conditions, and the Texas trial court incarcerated her on June 13, 2003.

¶5 On April 21, 2003, before C.L.B.'s Texas incarceration, the Washington Department of Social and Health Services (DSHS) petitioned the Kitsap County Superior Court to declare all three children dependent. When the dependency petition was filed, C.L.B. had ostensibly not

---

[2] Among other things, Texas ordered C.L.B. to abstain from alcohol and drug use, submit to drug testing, commit no further offenses, obtain employment, perform community service, pay various forms of restitution, complete an educational program for those convicted of drug-related offenses, attend Alcoholics Anonymous and Narcotics Anonymous meetings, and report regularly to a supervision officer.

seen any of the children since she placed them with Annette Lamphere in May 2001. As part of the dependency process, DSHS offered C.L.B. a variety of services after filing the dependency petition in April 2003, but she engaged in none of the services before her incarceration in June.[3] While C.L.B. was incarcerated in Texas, equivalent services were unavailable due to inadequate funding.[4]

¶6 The Kitsap County Superior Court declared all three children dependent on August 13, 2003. A subsequent dependency dispositional hearing order was issued on October 22, 2003, outlining steps C.L.B. had to take to end the dependency proceedings for her children. C.L.B. did not comply with the October 2003 dispositional order, and DSHS filed a petition to terminate C.L.B.'s parental rights on May 12, 2004. C.L.B. remained incarcerated between the August 2003 dependency order and DSHS's filing of the May 12, 2004 termination petition.

¶7 A parental rights termination hearing was held on January 12, 2005. At the time of the hearing, C.L.B. had not seen the children in about four years but had written to them monthly for much of her time in the Texas prison. After hearing (1) the testimony of a child welfare social worker with the Division of Children and Family Services and a court appointed special advocate both recommending termination and (2) arguments by DSHS and C.L.B.'s attorney, the trial court terminated C.L.B.'s parental rights.

¶8 C.L.B. appeals.

---

[3] Services offered were drug and alcohol assessments, random urine analysis, parenting classes, Narcotics Anonymous meetings, and a psychosexual evaluation based on allegations that C.L.B. had molested B.B. and C.B.

[4] Although the programs did not satisfy the service requirements of the dependency orders, C.L.B. successfully completed employment readiness programs and a "Changes" program while in prison. The completion of these programs made C.L.B. eligible for release from prison in Texas in February 2005.

## ANALYSIS

### CONSTITUTIONAL CHALLENGE

¶9 C.L.B. challenges the facial constitutionality of the parental rights termination statutes, RCW 13.34.180 and 13.34.190, arguing that they impede a parent's fundamental rights and are not narrowly drawn to meet a compelling state interest. The State responds that the statutes are narrowly tailored to focus on the children's safety and, thus, meet the State's compelling interest in the children's welfare.

A. Standard of Review

 ¶10 A statute is presumed constitutional. *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992). A party challenging a statute has the burden of proving it is unconstitutional beyond a reasonable doubt. *I.J.S.*, 128 Wn. App. at 115. Interpreting a statute and determining whether a statute is unconstitutional are questions of law we review de novo. *In re Parentage of C.A.M.A.*, 154 Wn.2d 52, 57, 109 P.3d 405 (2005); *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001). Parties asserting that a statute is facially unconstitutional must also prove that no set of circumstances exists in which the statute, as currently written, can be constitutionally applied. *I.J.S.*, 128 Wn. App. at 115-16.

 ¶11 Because a parent's right to raise her children without the State's interference is a constitutionally protected fundamental liberty interest, we examine the termination statutes under the strict scrutiny standard. *C.A.M.A.*, 154 Wn.2d at 57, 60-61; *In re Custody of Smith*, 137 Wn.2d 1, 15, 969 P.2d 21 (1998). Thus, RCW 13.34.180 and 13.34.190, as written, are facially constitutional if they advance a compelling state interest and are narrowly drawn to meet that interest. *See C.A.M.A.*, 154 Wn.2d at 57; *see also Smith*, 137 Wn.2d at 15.

## B. RCW 13.34.180 and 13.34.190

¶12 C.L.B. argues that Washington's termination statutes, RCW 13.34.180 and 13.34.190, are facially unconstitutional because they improperly allow courts to terminate parental rights based solely on the "best interests of the child" standard and not the "prevention of harm to the child" standard. She further argues that the termination statutes are not narrowly drawn because they allow the courts to terminate a protected fundamental right without first showing that no less restrictive alternatives exist, namely dependency guardianship. C.L.B. contends that a court must always consider dependency guardianship as an alternative to termination, even when a petition for dependency guardianship has not been filed.

¶13 The State responds that although the termination statutes require a showing that terminating a parent's rights is in the "best interests of the child," they first mandate satisfaction of six statutory factors that, if satisfied, implicitly demonstrate that continuation of the parent-child relationship has actually harmed or will potentially harm the child. The State also maintains that a court need not consider a dependency guardianship as an alternative to parental right termination unless a petition for dependency guardianship has been filed.

¶14 Division One of this court recently addressed C.L.B.'s arguments in *I.J.S.*, 128 Wn. App. 108. Short of preventing harm to the child, the standard of "best interests of the child" is insufficient to serve as a compelling state interest overruling a parent's fundamental right to raise her children. *Smith*, 137 Wn.2d at 20. Washington allows State interference with a parent's protected right to raise her children only where the State seeks to prevent harm or risk of harm to the child. *Smith*, 137 Wn.2d at 18. The State can constitutionally intrude on parental rights only when parental actions or decisions seriously conflict with the child's physical or mental health. *Smith*, 137 Wn.2d at 18.

¶15 As Division One observed in *I.J.S.*, the termination statutes require the State to show that termination of the parent-child relationship is necessary to prevent harm to the child. 128 Wn. App. at 117-18. Under RCW 13.34.180, the State cannot pursue the termination of a parent's right until it demonstrates that:

"(a) . . . the child has been found to be a dependent child;

"(b) . . . the court has entered a dispositional order pursuant to RCW 13.34.130;

"(c) . . . the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

"(d) . . . services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

"(e) . . . there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future [and]

"(f) . . . continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home."

*I.J.S.*, 128 Wn. App. at 117-18 (alterations in original) (quoting RCW 13.34.180(1)).

¶16 We agree with Division One's analysis. Although the statute does not expressly employ the "prevention of harm to the child" standard, the State necessarily demonstrates that termination of parental rights is required to prevent harm or risk of harm to the child when it shows that all six factors are satisfied.

¶17 For example, the first factor listed under RCW 13.34.180 mandates a showing that the child is dependent. A dependent child is one who:

(a) Has been abandoned;

(b) Is abused or neglected . . . by a person legally responsible for the care of the child; or

(c) Has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development.

RCW 13.34.030(5). Thus, the State must show that the child has actually been abandoned, abused, or neglected, or finds himself in circumstances that constitute a danger of substantial damage to his physical or psychological development. Satisfaction of this factor equates to finding harm or risk of harm to the child. *I.J.S.*, 128 Wn. App. at 118. Termination, therefore, provides an avenue for the State to prevent harm or risk of harm to the child.

¶18 Similarly, factors (d), (e), and (f) require the State to show that services have been provided to cure any parental deficiencies, that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future, and that continuation of the parent-child relationship clearly diminishes the child's prospects for integration into a stable and permanent home. RCW 13.34.180(1)(d), (e), (f). These factors focus on prevention of harm or risk of harm to the child.

¶19 Finally, the termination statutes are narrowly drawn to meet the State's compelling interest to prevent harm or risk of harm to children, and the court need not consider a dependency guardianship as an alternative to termination when no petition has been filed. *In re Dependency of K.S.C.*, 137 Wn.2d 918, 930, 976 P.2d 113 (1999); *I.J.S.*, 128 Wn. App. at 120-21. Proof of factor (f) of RCW 13.34.180(1) "establishes that continuation of the parent-child relationship will harm the child, and in such circumstances a guardianship . . . would not be an appropriate alternative to termination." *K.S.C.*, 137 Wn.2d at 930. Further, the provision of services to cure parental deficiencies and an opportunity to engage in those services provide the opportunity to each parent to pursue a less restrictive alternative that the State must first encourage and offer

before it seeks to terminate parental rights. *See* RCW 13.34.180(1)(d) and (e).

¶20 Because RCW 13.34.180 and 13.34.190 require the State to prove in every instance that its request to terminate parental rights is based on prevention of harm or risk of harm to children, they survive strict scrutiny and are constitutional.

## C. Substantial Evidence of Factors Justifying Termination of C.L.B.'s Parental Rights

¶21 C.L.B. argues that substantial evidence does not support the trial court's findings of fact VIII, XIII, and XVI.[5]

¶22 A trial court may order termination of parental rights if (1) the State proves the six statutory factors under RCW 13.34.180(1) by clear, cogent, and convincing evidence and (2) the trial court finds that termination is in the best interests of the child. RCW 13.34.190; *In re Dependency of K.R.*, 128 Wn.2d 129, 140-41, 904 P.2d 1132 (1995). Clear, cogent, and convincing evidence exists when the evidence shows the ultimate fact at issue to be highly probable. *K.S.C.*, 137 Wn.2d at 925. We must uphold the trial court's findings if they are supported by substantial evidence such that a reasonable trier of fact could find the necessary facts by clear, cogent, and convincing evidence. *K.S.C.*, 137 Wn.2d at 925. Deference to the trial court's findings is of particular importance in termination proceedings. *K.S.C.*, 137 Wn.2d at 925.

¶23 Substantial evidence supports finding of fact VIII.[6] Although C.L.B. was incarcerated during the dependency

---

[5] C.L.B. also assigns error to the trial court's conclusions of law II, III, and IV. Although she does not discuss these conclusions of law in her appellate brief, it seems clear that she is asserting that conclusions of law II, III, and IV cannot flow from the alleged unsubstantiated findings of fact.

[6] Finding of fact VIII states:

The mother has failed to effectively avail herself of the services ordered pursuant to the aforesaid dependency orders. During the entire time period relevant to these proceedings, the aforementioned services were available if the

and although necessary services to correct parental deficiencies were unavailable to her while she was incarcerated, the services were available to her between April 21, 2003 and June 13, 2003, the date of her reincarceration. During that time, C.L.B. chose both not to engage in those services and to violate the conditions of her community supervision, leading to her incarceration and the subsequent unavailability of the offered services.

■■ ■■ ¶24 The State concedes that substantial evidence does not support finding of fact XIII.[7] But the trial court's error did not affect the trial's outcome because substantial evidence exists to establish the six mandated statutory factors under RCW 13.34.180(1) despite the erroneous finding that the mother had no substantive contact with the children for four years before the dependency petitions were filed. The trial court's decision to terminate C.L.B.'s parental rights did not hinge on her contact with the children for four years before the establishment of the children's dependency in August 2003 or during the four years before the termination proceeding in January 2005 (as the record establishes). Error is not prejudicial unless it presumptively affects the trial's outcome; error without prejudice is no basis for reversal. *Caldwell v. Dep't of Transp.*, 123 Wn. App. 693, 696-97, 96 P.3d 407, *review denied*, 154 Wn.2d 1006, 113 P.3d 481 (2005); *Ezell v. Hutson*, 105 Wn. App. 485, 492, 20 P.3d 975, *review denied*, 144 Wn.2d 1011, 31 P.3d 1185 (2001).

■■ ¶25 Finally, substantial evidence supports the trial court's finding of fact XVI, which effectively determines that

mother had chosen to avail herself of such services. The mother, [C.L.B.,] has been incarcerated in Texas throughout the dependency of these children. The mother, [C.L.B.,] chose not to engage in services prior to the filing of the dispositional order.

Clerk's Papers (CP) at 23.

[7] Finding of fact XIII states:

The mother failed to have substantive contact with the children for four years prior to the dependency. Since that time the mother has maintained monthly written contact; however, the children are non-responsive.

CP at 24.

the State satisfied RCW 13.34.180(1)(f).[8] C.L.B. argues that two of the children, S.B. and C.B., have integrated into a permanent home—their uncle's—and that continuation of the parent-child relationship will not diminish their integration into the uncle's home. Specifically, C.L.B. relies on *In re Welfare of S.V.B.*, 75 Wn. App. 762, 775, 880 P.2d 80 (1994). But the State correctly points out that *S.V.B.* is factually dissimilar.

¶26 In *S.V.B.*, the child was living with his paternal grandmother under a court-established guardianship; termination of the father's parental rights would not change that arrangement. *S.V.B.*, 75 Wn. App. at 775. In contrast, S.B. and C.B. are in foster care with their uncle, not a legal guardianship. There was testimony (1) describing the children's placement with their uncle as "permanent," (2) that a foster home may be considered "stable and permanent,"[9] and (3) that the uncle plans to adopt S.B. and C.B. Nevertheless, the record implies that C.L.B. intends to attempt reunification with the children despite her extensive record of abuse and neglect, her failure to correct parental deficiencies and substance abuse problems, and the children's lack of interest in maintaining a relationship with her. Even if C.L.B. were able to overcome her deficiencies, this process would take at least one to two years. The uncertainty of C.L.B.'s success and the considerable time necessary to complete the necessary services are significant obstacles

---

[8] Finding of fact XVI states:

Continuance of the parent-child relationship clearly diminishes the child's prospects for integration into a stable and permanent home. The mother has not been a placement resource for these children since 2001. The children are non-responsive, detached and restrained towards [her].

CP at 24.

[9] *See In re Esgate*, 99 Wn.2d 210, 214, 660 P.2d 758 (1983). But in determining that a foster home may be considered a "stable and permanent" placement, in *Esgate*, our Supreme Court held that continuation of the parent-child relationship could clearly diminish the child's prospects for integration into a stable and permanent home even if the child were not immediately placed for adoption upon termination. *Esgate*, 99 Wn.2d at 214. Thus, continuation of the parent-child relationship can clearly diminish the prospects of integration and permanence even if the child is currently settled into a "stable and permanent" foster placement. *See Esgate*, 99 Wn.2d at 214.

that clearly diminish the children's prospects for long-term integration and permanence.

¶27 Furthermore, C.L.B. has not challenged finding of fact XI that there is little likelihood that conditions will be remedied so that the children can be returned to her in the near future (factor (e) of RCW 13.34.180(1)). We accept this finding as true. *In re Interest of Mahaney*, 146 Wn.2d 878, 895, 51 P.3d 776 (2002) (unchallenged findings of fact are verities on appeal). A finding that continuation of the parent-child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home (factor (f) of RCW 13.34.180(1)) necessarily follows from a determination that the State has satisfied factor (e) of RCW 13.34.180(1). *In re Dependency of J.C.*, 130 Wn.2d 418, 427, 924 P.2d 21 (1996). The trial court did not err in terminating C.L.B.'s parental rights.

¶28 We affirm.

BRIDGEWATER and HUNT, JJ., concur.