[No. 58086-8-I.   Division One.   May 29, 2007.]

*In the Matter of the Dependency of* T.C.C.B.

*Dana M. Lind* (of *Nielsen Broman & Koch, PLLC*), for appellant.

*Robert M. McKenna, Attorney General*, and *Teresa B. Otsubo* and *Chris A. Williams, Assistants*, for respondent.

¶1 Cox, J. — Michelle Bryant challenges the constitutionality of RCW 13.34.180 and 13.34.190, statutes governing termination of the parent and child relationship. The trial court terminated her parental rights to her daughter, T.C.C.B. She also asserts there was insufficient evidence to find that continuation of the parent-child relationship diminished T.C.C.B.'s prospects for early integration into a stable and permanent home. Finally, she contends that the trial court erred when it concluded that termination was in T.C.C.B.'s best interests. Because Bryant fails in her burden to establish beyond a reasonable doubt that these statutes are unconstitutional, we reject her constitutional claim. There being no other basis to overturn the trial court's order, we affirm.

¶2 T.C.C.B. was born in 1994. Her biological parents are Michelle Bryant and David Blaine. T.C.C.B. is the youngest of Bryant's four children. In the first four years of T.C.C.B.'s life, she lived in a home where there was constant chaos, violence, and aggression. During this time, the Department of Social and Health Services (DSHS) received 48 referrals regarding Bryant and her children. Four of these referrals were determined to be founded based on failure to protect T.C.C.B.

¶3 In August of 1998, Bryant voluntarily placed T.C.C.B. in foster care. While in foster care, T.C.C.B. disclosed that her stepfather and brother had molested her. Bryant initially did not believe the allegations. DSHS removed T.C.C.B. from her mother's care and filed a dependency petition. In October, Bryant agreed to entry of an order of dependency, and T.C.C.B. was found to be dependent.

¶4 A sexual deviancy evaluation of T.C.C.B.'s stepfather did not substantiate the sexual abuse allegations. T.C.C.B. returned to Bryant's home in August of 1999. T.C.C.B. participated in a number of programs offered by DSHS for learning and behaviorally disordered children because she had a significant number of inattentive and hyperactive/impulsive behaviors.

¶5 Dr. Robert Fleming diagnosed T.C.C.B. with post-traumatic stress disorder, reactive attachment disorder (RAD), attention deficit/hyperactivity disorder, learning disorder, mild mental retardation, as well as other disorders. The RAD disorder prevents T.C.C.B. from establishing normal attachments to others. She often has outbursts and can become physically violent.

¶6 In January of 2002, T.C.C.B. disclosed that her two brothers and her stepfather's younger brother had sexually molested her. DSHS placed T.C.C.B. in out-of-home care for the second time. T.C.C.B. has been in numerous foster homes because of her extreme behaviors. In 2005, she was placed in Ryther Child Center, a group facility for emotionally and behaviorally disturbed children. She currently resides there.

¶7 Bryant has a long history of being emotionally or financially dependent on men. She has had relationships with several men who have engaged in sexual offenses, including T.C.C.B.'s father. She also has been with men who have had drug and alcohol problems. Bryant suffers from depression, anxiety, and borderline personality disorder.

¶8 DSHS has offered Bryant an extensive number of services beginning in 1994. Bryant often placed her children in respite care. In 1998, Bryant began individual mental health counseling and medication management. She continued to participate in a number of programs, including interactive parenting classes, Biblical parenting from a local church, and "SECURE" training, which is a program that teaches how to safely and securely hold T.C.C.B. when she is out of control.

¶9 The court ordered Bryant to engage in psychotherapy. The court also ordered her to engage in an expanded drug and alcohol evaluation and participate in a random monitored urinalysis (UA) program. She did not participate in random UAs and failed to participate in other services.

¶10 The court allowed Bryant supervised visits with T.C.C.B. intermittently from 2002 to 2004. However, Bryant often canceled scheduled visits or failed to show up.

¶11 The court terminated T.C.C.B.'s father's rights in 2004, which he did not appeal. In 2005, DSHS petitioned for termination of Bryant's parental rights to T.C.C.B. The court terminated Bryant's parental rights to T.C.C.B.

¶12 Bryant appeals.

## CONSTITUTIONAL CHALLENGE

¶13 Bryant argues that RCW 13.34.180 and 13.34.190 are unconstitutional because they regulate a fundamental right but are not narrowly drawn to achieve a compelling state interest. Applying a strict scrutiny standard to this case, we hold that these statutes are not unconstitutional.

¶14 Parents have a fundamental right in the care and custody of their children.[1] However, this right is not absolute.[2] We review termination statutes under the strict scrutiny standard because a parent's right to raise his or her children without State interference is a constitutionally protected fundamental liberty interest.[3] When a statute allows the State to interfere with a fundamental right, it is constitutional " 'only if the State can show that it has a compelling interest and such interference is narrowly drawn to meet the compelling state interest involved.' "[4] In termination proceedings, the State has a compelling interest in preventing harm or the risk of harm to the child.[5]

¶15 A statute is presumed constitutional, and the party challenging it has the burden of proving beyond a reasonable doubt that it is unconstitutional.[6] Whether a

[1] *In re Dependency of I.J.S.*, 128 Wn. App. 108, 116, 114 P.3d 1215, *review denied*, 155 Wn.2d 1021 (2005).

[2] *Id.*; *In re Welfare of Sumey*, 94 Wn.2d 757, 762, 621 P.2d 108 (1980).

[3] *In re Welfare of C.B.*, 134 Wn. App. 336, 342, 139 P.3d 1119 (2006).

[4] *I.J.S.*, 128 Wn. App. at 116 (quoting *In re Custody of Smith*, 137 Wn.2d 1, 15, 969 P.2d 21 (1998)).

[5] *Id.*

[6] *In re Det. of C.W.*, 147 Wn.2d 259, 277, 53 P.3d 979 (2002).

statute is unconstitutional is a question of law that we review de novo.[7]

■ ¶16 One asserting a facial challenge to a statute must also prove " 'no set of circumstances exists in which the statute, as currently written, can be constitutionally applied.' "[8]

■ ¶17 Bryant does not appear to contest that the State has a compelling interest in preventing either harm or the risk of harm to a child. Either is constitutionally sufficient.[9] Rather, she bases her argument on the assertion that the termination statutes are not narrowly tailored to achieve that compelling interest. Specifically, she argues that the statutes lack the necessary means-ends fit because they do not require *only that degree of regulation* to prevent harm or the risk of harm to the child.[10]

¶18 We considered a very similar argument in *In re Dependency of I.J.S.*[11] Division Two of the Court of Appeals addressed this type of challenge further in *In re Welfare of C.B.*[12]

¶19 In *I.J.S.*, the parents challenged the constitutionality of the termination statutes, asserting that the statutes do not require the State to prove that the relationship with the parent harms the child.[13] They also argued that the State must prove that dependency guardianship is not a viable alternative to termination, regardless of whether a dependency guardianship has been filed.[14] This court decided that establishing that a child is dependent and that it

---

[7] *C.B.*, 134 Wn. App. at 342.

[8] *I.J.S.*, 128 Wn. App. at 115-16 (quoting *City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004)).

[9] *Id.* at 116.

[10] Br. of Appellant and Mot. for Accelerated Review at 20.

[11] 128 Wn. App. 108, 114 P.3d 1215, *review denied*, 155 Wn.2d 1021 (2005).

[12] 134 Wn. App. 336, 139 P.3d 1119 (2006).

[13] 128 Wn. App. at 110.

[14] *Id.*

is unlikely conditions can be remedied so the child can be returned in the near future under RCW 13.34.180(1)(a) and (e) establishes a finding of harm to the child.[15] More specifically, as part of the required six statutory factors, the State must prove by clear, cogent, and convincing evidence that the relationship with the parents harms or potentially harms the child. Only then may a court consider whether termination is in the best interest of the child.[16]

¶20 This court also rejected the argument that strict scrutiny requires the trial court to consider dependency guardianship as a viable alternative, regardless of whether a petition is filed.[17] The court distinguished its decision in *Dependency of A.C.*, which held that the trial court must consider a dependency guardianship as an alternative to termination where *both* a dependency guardianship and a termination petition are filed.[18] Because no one had filed a dependency guardianship petition, the *I.J.S.* court upheld the constitutionality of RCW 13.34.180 and 13.34.190.[19]

¶21 *C.B.* involved a similar facial constitutional challenge to these statutes.[20] Division Two agreed with this court's analysis in *I.J.S.*[21] But it also held that the State necessarily demonstrates that termination of parental rights is required upon a proper evidentiary showing of all six factors under RCW 13.34.180(1), including (d), (e), and (f).[22] Accordingly, the termination statutes are narrowly

---

[15] *Id.* at 118.

[16] RCW 13.34.190 (1)(a) provides: "The allegations contained in the petition as provided in RCW 13.34.180(1) are established by clear, cogent, and convincing evidence."

[17] *I.J.S.*, 128 Wn. App. at 119-20.

[18] *Id.* (citing *In re Dependency of A.C.*, 123 Wn. App. 244, 251-52, 98 P.3d 89 (2004)).

[19] *Id.* (relying on *In re Dependency of K.S.C.*, 137 Wn.2d 918, 931, 976 P.2d 113 (1999) (Termination statutes do not require a court to consider dependency guardianship as an alternative to termination where no petition has been filed.)).

[20] 134 Wn. App. at 342.

[21] *Id.* at 344.

[22] *Id.* at 345. RCW 13.34.180(1)(d)-(f) provides, in relevant part:

drawn to achieve the State's compelling interest in protecting children from harm and are, thus, constitutional.[23]

¶22 Relying on the supreme court's decision in *Dependency of K.S.C.*, the *C.B.* court reasoned that proof of RCW 13.34.180(1)(f) " 'establishes that continuation of the parent-child relationship will harm the child, and in such circumstances a guardianship . . . would not be an appropriate alternative to termination.' "[24] The court also indicated that the requirement that the State first offer the opportunity for and provide services to cure parental deficiencies[25] provides the opportunity to each parent to pursue a less restrictive alternative before the State seeks termination.[26]

¶23 Notwithstanding these authorities, Bryant urges that *I.J.S.* was wrongly decided. We disagree and conclude, after due consideration of the arguments she advances in her brief, that that precedent is sound.

¶24 Nevertheless, Bryant appears to argue that the State's proof by clear, cogent, and convincing evidence of all elements under RCW 13.34.180(1) does not prove that *all*

---

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. The presumption shall not arise unless the petitioner makes a showing that all necessary services reasonably capable of correcting the parental deficiencies within the foreseeable future have been clearly offered or provided. . . .

. . . .

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

[23] *C.B.*, 134 Wn. App. at 345.

[24] *Id.* (alteration in original) (quoting *In re Dependency of K.S.C.*, 137 Wn.2d 918, 930, 976 P.2d 113 (1999)).

[25] RCW 13.34.180(1)(d) and (e).

[26] *C.B.*, 134 Wn. App. at 345-46.

contact between parent and child should be terminated, subject to the "best interests of the child" requirement of RCW 13.34.190. Specifically, she argues that narrow tailoring requires the court to consider two statutorily authorized alternatives to termination: a dependency guardianship or an open adoption.

¶25 Neither of these alternatives must be considered for the termination statutes to pass constitutional muster. First, there is no pending adoption proceeding. Thus, the reasons stated in *K.S.C.* and *I.J.S.* support our conclusion here that the court need not consider the alternative of adoption when there is no pending petition for such a proceeding. Second, an adoption presupposes termination of the rights of the biological parents.[27] Thus, it is unclear how an open adoption is a less restrictive alternative to termination, where termination of parental rights is a prerequisite to adoption. Third, as the State correctly points out, it is not a party to open adoption agreements.[28] It is difficult to see how it could offer such a proposal as a less restrictive alternative in a proceeding to terminate parental rights. That is particularly problematic where doing so raises the certainty of the State's interfering with the rights of prospective adoptive parents.

¶26 A dependency guardianship fares no better as a less restrictive alternative. There is no such proceeding pending. Thus, there is no constitutional or other requirement to consider a theoretical dependency proceeding.[29]

¶27 *C.B.* makes clear that the State's compelling interest to prevent harm or risk of harm to the child is narrowly drawn because RCW 13.34.180(1) requires the State to

---

[27] RCW 26.33.260(1).

[28] RCW 26.33.295 provides in relevant part:

> (2) Agreements regarding communication with or contact between child adoptees, adoptive parents, and a birth parent or parents shall not be legally enforceable unless the terms of the agreement are set forth in a written court order entered in accordance with the provisions of this section.

[29] *I.J.S.*, 128 Wn. App. at 120-21; *K.S.C.*, 137 Wn.2d at 928, 930.

provide the parent with services and an opportunity to engage in them before termination may be ordered. Here, the State offered Bryant a wide variety of services from 1998 to 2005 in order to cure her parental deficiencies. Although Bryant participated in some classes, she failed to substantially correct her parental deficiencies since the finding of dependency in 1998. As in *C.B.*, a guardianship petition here would either harm or threaten harm to T.C.C.B. due to Bryant's parental unfitness.

¶28 We note that the circumstances here, where Bryant's parental unfitness causes harm to the child, further undercut her constitutional challenge. That is because one asserting such a facial challenge must also prove no set of circumstances exists in which the statute can be constitutionally applied.[30] She cannot sustain her burden of proof under these circumstances.

¶29 Bryant further argues that the termination statutes are unconstitutional because they improperly shift the burden to the parent to raise the question of whether there are less restrictive alternatives. We disagree.

¶30 In *I.J.S.*, this court, following supreme court precedent, concluded that a court considering a petition for termination need not consider a dependency guardianship as an alternative if there was no pending petition for such a guardianship. Bryant now claims that this requires a parent to present a guardianship petition to the court. According to Bryant, this shifts the burden of proof of less restrictive alternatives to the parent, away from the State.

¶31 We disagree with Bryant's characterization. There is no improper burden shifting when a court declines to engage in review of speculative assertions.[31] It is difficult to see how a court could review a dependency guardianship as

---

[30] *I.J.S.*, 128 Wn. App. at 115-16 (citing *Moore*, 151 Wn.2d at 669).

[31] *In re Tiffany P.*, 215 W. Va. 622, 625, 600 S.E.2d 334 (2004) (Where least restrictive alternatives are considered, courts are not required to exhaust every speculative possibility of parental improvement before terminating a parent's rights when there is a threat of harm to the child.).

an alternative to termination when there is no petition or other evidence to support a guardianship. For example, the court in this case found that Bryant's mother and older daughter, Christina, are not viable options to care for T.C.C.B. Thus, a dependency guardianship was simply not an alternative.

¶32 Bryant relies on several cases from other jurisdictions to support her constitutional challenge. The statutes in those cases appear to require the State to prove that the termination of parental rights is the least restrictive means of protecting the child from harm before a court may terminate a parent's rights.[32] None of the cases persuade us that she has met her burden to prove our termination statutes are unconstitutional.

¶33 We first note that we are not bound by statutes from other jurisdictions.[33] In *In re Interest of C.W.W.*, the child was born prematurely with traces of cocaine in her blood and the mother was arrested.[34] When the child was two months old and while the mother was in jail, the Department of Children and Family Services (Department) petitioned for an order of dependency and judgment terminating parental rights. The mother was never offered a case plan with a goal of reunification. The trial court terminated her parental rights.

¶34 The Florida District Court of Appeals reversed the termination order because the Department failed to estab-

---

[32] *In re Interest of C.W.W.*, 788 So. 2d 1020, 1023 (Fla. Dist. Ct. App. 2001) (For the court to grant a petition terminating parental rights, "the Department [of Children and Family Services] must prove the allegations supporting the termination of [those] rights by clear and convincing evidence and must establish that termination of those rights is the least restrictive means of protecting the child from harm."); *accord In re Interest of D.A.*, 846 So. 2d 1250, 1251-52 (Fla. Dist. Ct. App. 2003); *In re Tiffany P.*, 215 W. Va. at 625-26 (" 'As a general rule the least restrictive alternative regarding parental rights to custody of a child . . . will be employed; however, courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened[.]' " (alterations in original) (internal quotation marks omitted) (quoting *In re Aaron Thomas M.*, 212 W. Va. 604, 606, 575 S.E.2d 214 (2002))).

[33] *Eagan v. Spellman*, 90 Wn.2d 248, 255, 581 P.2d 1038 (1978).

[34] 788 So. 2d 1020, 1021-22 (Fla Dist. Ct. App. 2001).

lish by clear and convincing evidence that the mother was unfit.[35] The court reasoned that the mother was never offered a case plan with a goal of reunification, much less failed to comply with one, and there was no evidence of any abuse or neglect of the child.[36]

¶35  In *In re Interest of D.A.*, the Florida Court of Appeals similarly reversed the termination order because the Department failed to prove the allegations of termination by clear and convincing evidence and that termination was the least restrictive alternative.[37] There was no evidence in the record that the children were under any threat of harm due to the mother's continued parental relationship with the children.

¶36  In contrast, DSHS offered Bryant numerous services to remedy her parental deficiencies and she continually failed to either complete the programs offered or comply with the requirements. Also, experts testified that Bryant is not fit to meet T.C.C.B.'s needs. As addressed later in this opinion, there is substantial evidence to establish that termination is in T.C.C.B.'s best interests and continuation of the parent-child relationship poses a risk of harm to T.C.C.B.

¶37  We conclude that Bryant has failed to prove beyond a reasonable doubt that RCW 13.34.180 and 13.34.190 are unconstitutional.

¶38  We affirm the order terminating Bryant's parental rights to T.C.C.B.

¶39  The remaining issues of this opinion are not of precedential importance. Accordingly, pursuant to RCW 2.06.040, the remainder of this opinion is not published.

COLEMAN and BECKER, JJ., concur.

---

[35] *Id.* at 1024-25.

[36] *Id.* at 1025.

[37] 846 So. 2d 1250, 1253 (Fla. Dist. Ct. App. 2003).